Norman A. WOODFORD, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–8710–PC–00902.

Supreme Court of Indiana.

Oct. 17, 1989.

J. Richard Kiefer, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Mary Dreyer, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Appellant Norman Woodford and an accomplice robbed a Hook's drug store in Indianapolis. During the robbery, an Indianapolis police officer and Woodford's accomplice engaged in a gun battle. Both were killed. Subsequently, in November 1976, Woodford pled guilty to the murder of a police officer. Ind.Code § 35–13–4–1(b)(1) (Burns 1975). He was sentenced to life imprisonment. Five years and eleven months later in December 1982, Woodford filed a petition for post-conviction relief challenging the validity of the guilty plea. After an evidentiary hearing, the trial court found in favor of the State on the issue of laches and denied Woodford's petition.

Upon appeal, this Court reversed denial of Woodford's petition and remanded to the trial court for a new evidentiary hearing in light of our decision in *Twyman v. State* (1984), Ind., 459 N.E.2d 705, which held that the State has the burden of proof with regard to laches. *Woodford v. State* (1985), Ind., 484 N.E.2d 563. On remand, the trial court held a second evidentiary hearing on Woodford's petition. The record of the first hearing was introduced by stipulation, and the trial court again found for the State. The court entered extensive findings of fact and conclusions of law including a conclusion that Woodford's guilty plea was knowingly and voluntarily entered. The trial court did not specifically state that laches barred Woodford's claim. Woodford appeals again, alleging that the trial court erred on the issue of laches and in finding for the State on the merits of his post-conviction claim. We affirm.

I. *Laches*

Woodford argues that the State failed to carry its burden of proof on the issue of laches. For laches to bar relief, the State must prove by a preponderance of the evidence, first, that the petitioner unreasonably delayed seeking relief, and, second, that the State has been prejudiced by the delay. *Perry v. State* (1987), Ind., 512 N.E.2d 841. In reviewing claims that evidence is insufficient to show laches, we do not reweigh the evidence nor judge the credibility of the witnesses. Rather, we consider only that evidence most favorable to the judgment, together with all reasonable inferences to be drawn therefrom. If the determination of the court is supported by substantial evidence of probative value, the judgment will be affirmed. *Washington v. State* (1987), Ind., 507 N.E.2d 239.

In this case, the evidence of prejudice presented by the State was not sufficient to sustain a finding of laches. After the second evidentiary hearing, the trial court issued the following findings of fact

relevant to the prejudice part of the laches test:

b. The bullets and fragments recovered at the autopsy of Officer Manly and Robbie Woods are no longer available to the State, but were destroyed within five months of the sentencing on November 5, 1976.

c. The Hooks Shopping bag containing cigarettes and a bottle of baby oil were destroyed in April of 1977, less tha[n] Five (5) months after the sentencing hearing in this cause.

d. The 38. cal weapon obtained from Norman Woodford was ordered disposed of in 1984 and the .357 cal. Magnum connected with this case was ordered sold at auction in December, 1985.

e. State's witnesses Lilith Healy, Thomas Finch, Albert Belt, and James Terrell are available to testify at a new trial. Robin Denise Brooks failed to appear as subpoenaed for the P.C.R. hearing.

f. Detective Larkins testified at the hearing that Norman Woodford made a statement admitting his guilt to Detective Larkins, Detective Jerry Campbell and Detective Harry Dunn at approximately 4:30 p.m. on the date of his arrest. There is no waiver of rights form. All three police officers are presently available.

(Record at 144–45). Although the findings make it clear that all of the physical evidence from this case was disposed of, the extent to which the loss of that evidence prejudices the State must be measured against what its presence would have resolved at trial. In this case, witnesses are available to testify about how the physical evidence related to the crime, and none of the disposed evidence was so essential that its loss would prejudice the State enough to require a finding of laches.

Lack of prejudice to the State's case is also shown by the fact that all but one of the State's witnesses are available to testify. At the second post-conviction hearing, Lilith Healy, the cashier in the Hook's drug store, identified Woodford as the man who robbed her. Detective Larkins, the police detective who conducted the original investigation, also testified. Larkins was questioned about the availability of the State's other witnesses. He stated that Albert Belt, the drug store security guard who had positively identified Woodford, no longer had a permanent address but generally frequented a gambling establishment and could have been subpoenaed to testify. Larkins also testified that James Terrell, an ambulance driver who was driving by the drug store and saw Woodford fleeing from the scene, was living in Evansville and remembered the crime. Terrell was not subpoenaed to testify. Finally, Larkin testified that Thomas Finch, who talked to Woodford shortly after the crime and received from him a Hook's shopping bag containing a bottle of baby oil and a package of cigarettes purchased prior to the robbery, was still living in Indianapolis and was available to testify. Finch was not subpoenaed.

The fact that Terrell, Belt and Finch were not called to testify supports Woodford's argument that the State failed to present sufficient evidence to support a finding of laches. The absence of the testimony of the three men, coupled with the relative unimportance of the physical evidence and Mrs. Healy's eyewitness testimony identifying Woodford lead us to conclude that the evidence presented by the State did not prove sufficient prejudice to its case. Rather than enter a finding on the State's affirmative defense of laches, the trial court addressed the merits of Woodford's case.

■ Woodford argues that the trial court erred by not making a finding on laches after the second evidentiary hearing. Many trial judges who had post-conviction petitions under advisement when this Court decided *White v. State* (1986), Ind., 497 N.E.2d 893, elected to pass over the State's customary affirmative defenses and go straight to the merits of the post-conviction claim. Judge Gifford's decision to do that in this litigation obviously did not harm Woodford, and given the evidence recited above, should not lead to a finding of laches anytime in the near future.

II. *Voluntariness of the Guilty Plea*

■ Woodford argues that the trial court's finding on the voluntary and intelli-

gent nature of his guilty plea was erroneous for three reasons. First, Woodford argues that the trial court deprived him of due process and due course of law by applying standards for review of a guilty plea articulated in *White v. State:*

> To decide a claim that a plea was not made voluntarily and intelligently, we will review all the evidence before the court which heard his post-conviction petition, including testimony given at the post-conviction trial, the transcript of the petitioner's original sentencing, and any plea agreements or other exhibits which are a part of the record.
>
> A petitioner who claims that his plea was involuntary and unintelligent but can only establish that the trial judge failed to give an advisement in accordance with § 35–35–1–2 has not met his burden of proof. He needs to plead specific facts from which a finder of fact could conclude by a preponderance of the evidence that the trial judge's failure to make a full inquiry in accordance with § 35–35–1–2(a) rendered his decision involuntarily or unintelligent. Of course, unless the record reveals that the defendant knew or was advised at the time of his plea that he was waiving his right to a jury trial, his right of confrontation and his right against self-incrimination, *Boykin* will require that his conviction be vacated.

497 N.E.2d at 905. We applied this standard to Randy White's claim and to everyone else. *Buskirk v. State* (1987), Ind., 511 N.E.2d 305. The trial court correctly applied the *White* standard to determine the validity of Woodford's guilty plea.

■ Next, Woodford argues that the trial court denied him due process and due course of law when it entered a judgment relying in part on a plea agreement and a petition to withdraw a plea of not guilty and enter a plea of guilty, documents that were never admitted into evidence. However, even if the trial court had not considered the documents, the rest of the available information under the *White* standard was adequate to support the court's conclusion that Woodford's guilty plea was voluntarily and intelligently entered. Consideration of the documents that were not in evidence was harmless error.

■ Finally, Woodford argues that the trial court erred in finding his guilty plea was knowingly and voluntarily entered. This argument fails under *White*. In the post-conviction hearing, Woodford claimed only that the judge who sentenced him failed to give him certain advisements.[1] He did not plead and prove specific facts from which a finder of fact could conclude by a preponderance of the evidence that the sentencing judge's failure to make a full inquiry in accordance with the statute rendered his decision involuntarily or unintelligent. *White*, 497 N.E.2d at 905.

Stuck with the record of a post-conviction hearing held before *White*, counsel has argued as best one could that his client is entitled to relief under *White*. This Court recognized that doing so would be difficult and determined that a petitioner so situated should be entitled to file a new petition if he "has any other basis upon which to establish that his plea was not voluntary and intelligent." *White*, 497 N.E.2d at 906.

We affirm the judgment of the post-conviction court.

GIVAN, PIVARNIK and DICKSON, JJ., concur.

---

1. Woodford claims, for example, that the judge failed to tell him that he had a right to a public and speedy trial by jury. Woodford was advised that he had a right to a trial by jury. Omitting the words public and speedy does not require vacating a plea. *See Fisher v. State* (1988), Ind., 519 N.E.2d 539, 540. Woodford also claims that he was not advised of the elements of the offense or that a plea of guilty admits the truth of the allegations in the indictment. The sentencing judge read the indictment to Woodford in open court; it clearly listed all of the elements of the crime. Finally, Woodford claims that the trial court did not advise him of his right to confront and cross-examine the witnesses against him. Consequently, he argues that his guilty plea was not knowingly and voluntarily entered under the decision of the United States Supreme Court in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The sentencing judge told Woodford that he had the right to "see and hear" the witness against him. That advisement was sufficient. *See Johnson v. State* (1984), Ind., 471 N.E.2d 1107.

DeBRULER, Justice, dissenting.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." A major goal of this constitutional confrontation rule is to give the criminal defendant an opportunity to cross-examine the witnesses against him. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The governing Indiana guilty plea statute also views the right of confrontation as contemplating both a physical confrontation with witnesses and an opportunity to cross-examine them. I.C. 35–35–1–2(a)(2)(B). *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), requires that a record of guilty plea proceedings show that the accused was offered a trial at which he would have the opportunity to cross-examine witnesses against him and that he intelligently and understandingly rejected the offer.

According to the findings of the trial court, a written plea agreement of unspecified date was filed at the time the plea was received in which the appellant was advised that he had the right to cross-examine witnesses, and at that time the judge advised him that he had the right to "see and hear" all of the witnesses, but did not mention the cross-examine aspect. There is no finding or conclusion at all that appellant rejected an offer of a trial at which he could cross-examine the witnesses against him. The standard set forth in *White v. State* (1986), Ind., 497 N.E.2d 893, does not affect the requirements of *Boykin* that the record at some point reflect that the defendant was offered a trial with confrontation and that he intelligently and understandingly rejected that offer. *Herman v. State* (1988), Ind., 526 N.E.2d 1183, 1185. This record does not so reflect. I would therefore reverse and remand with instruction to grant post-conviction relief in the form of permission to withdraw the plea of guilty.