**Joseph STEWART, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 49A02–8807–PC–261.

Court of Appeals of Indiana, Second District.

Jan. 16, 1990.
Rehearing Denied Feb. 12, 1990.

Susan K. Carpenter, Public Defender, John Pinnow, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lisa Anne McCoy, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Joseph Stewart (Stewart) appeals from the denial of his post-conviction relief.

We affirm.

This case comes to us by way of procedural complexities, the resolution of which are crucial to its outcome. The pertinent facts are as follows: Stewart pled guilty to the charge of theft by deception on September 16, 1971. He received an indeterminate sentence of one to five years. On November 13, 1985, Stewart filed a *pro se* Petition for Post–Conviction Relief. The petition was in the nature of a vague and unspecific challenge to Stewart's conviction and sentence as violative of the U.S. Constitution, as well as of the laws and constitution of the State of Indiana. The State answered on November 14, 1985, and January 8, 1986, asserting *inter alia* the affirmative defense of laches.

On June 10, 1986, Stewart amended his Petition, alleging that his guilty plea was not made knowingly, intelligently, and voluntarily because the trial court failed to advise him regarding his right of confrontation, the right against self-incrimination, and the right to a speedy jury trial. On the same date the State Public Defender entered an appearance for Stewart.

On October 22, 1986, a PCR hearing was held. Stewart, by counsel, presented evidence going to the merits of his contention; Stewart was also prepared to rebut the State's laches defense. The State, however, did not present evidence of laches at this proceeding, defending solely upon the merits.

Post-conviction relief was denied on December 12, 1986; no findings of fact or conclusions of law accompanied the order. Stewart filed a Motion to Correct Errors which was sustained following a hearing on the Motion. The trial court vacated its judgment denying relief and held a second post-conviction relief hearing. At this proceeding the State was permitted, over objection by Stewart's counsel, to present evidence of laches. Stewart's post-conviction relief was subsequently denied and he instituted this appeal.

On appeal, Stewart presents three allegations of error, which we rephrase as follows:

(1) Stewart's guilty plea was not knowing, intelligent and voluntary because the trial court failed to advise him of his right of confrontation and his right against self-incrimination;

(2) The State waived the defense of laches by failing to present evidence of it at the first available opportunity; and

(3) The State did not sustain its burden of proof on the laches issue.

## I

Stewart's plea hearing occurred in 1971, prior to the passage of Indiana's advisement statute. Therefore the question of whether Stewart's plea was voluntary, knowing, and intelligent is determined by *Boykin v. Alabama* (1969) 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. Compliance with *Boykin* is in turn determined by reference to *White v. State* (1986) Ind., 497 N.E.2d 893, 905:

"Of course, unless the record reveals that the defendant knew or was advised at the time of his plea that he was waiving his right to a jury trial, his right of confrontation and his right against self-incrimination, *Boykin* will require that his conviction be vacated."

The record in the present case reflects that Stewart was advised that he had the right to a jury trial, that if one was to be held Stewart would not be required to testify and that he would have the right to have witnesses testify on his behalf:

"THE COURT: Do you understand that you do not have to plead guilty. You can require the State to prove you're guilty beyond any reasonable doubt?

MR. STEWART: Yes, sir.

THE COURT: And that you're entitled to a trial by jurors. Do you understand that?

MR. STEWART: Yes.

THE COURT: Do you understand what a jury is comprised of?

MR. STEWART: Yes, sir.

THE COURT: Twelve people all of whom must agree upon your guilt before you can be found guilty. Do you understand that?

MR. STEWART: Yes, sir.

THE COURT: Do you understand that at a trial you may testify or not testify as you see fit. Do you understand that?

MR. STEWART: Yes, sir.

THE COURT: And if there were a trial you have the right to have witnesses to testify on your behalf at no expense to you. Do you understand that?

MR. STEWART: Yes, sir." Record at 57–58.

The record is silent as to Stewart's awareness and/or advisement concerning his right to confront the witnesses against him. We note also that at the second post-conviction relief hearing the State conceded error with respect to this issue because it was unable to provide witnesses who could have possibly testified as to Stewart's awareness that he was waiving the right of confrontation. While the State's concession does not conclusively dispose of the issue, it speaks to Stewart's lack of awareness of this right. Absent further evidence to the contrary, we might therefore appropriately vacate the guilty plea.

Finally, the trial court in its "Findings of Fact" dated October 14, 1987, and addressed to the second PCR proceeding stated:

"The court did not, in so many words, advise Petitioner that he was waiving his right to confront the witnesses against him...." Record at 125.

Because *Boykin* has held that a defendant's voluntariness cannot be determined from a silent record we are constrained to hold that Stewart's guilty plea was not made knowingly, intelligently, and voluntarily.

## II

■ Our decision that Stewart's plea advisement was deficient under *Boykin* and *White* only begins our inquiry. Stewart's

success upon the merits requires us to address the laches issues. (*See Fisher v. State* (1988) Ind., 519 N.E.2d 539, in which the Indiana Supreme Court, facing laches issues similar to those here, was able to avoid their resolution by deciding that the petitioner was unsuccessful on the merits of his guilty plea challenge.) The resolution of this case turns upon whether or not the State waived the right to present the defense of laches. Although pleading the affirmative defense in its answer, the State declined to present evidence of laches at the first PCR hearing. The State claimed initially that it did not want to present laches evidence because it believed it would prevail upon the merits and because it wanted to present a "test case" to the Indiana Supreme Court:

"MS. KATT:[1] Your Honor, initially it was the State's position that uh, the State could prevail on the merits basically because it's the State's position that the trial courts in the State of Indiana were not required to advise the defendant of anything except find out whether the plea was voluntarily and knowingly and intentionally entered until 1973 when the first statute came out. Now in, after talking with uh, Defense Counsel I've been looking at the cases. I can't find a case that comes out and says the trial court was required to tell the defendant his Boykin rights in '71 and '72, until the '73, after the '73 statute. Because this is important and because I don't know what the Indiana Supreme Court is going to say, I'd like to have an opportunity to present a laches case. In a way I'm not, if I, if you allow me the opportunity, a continuance, and allow me the opportunity to present laches then I'm afraid that they won't rule on this particular issue, which is the one I want them to address." Record at 164–165.

However it also became apparent that the State was not prepared to go forward with its affirmative defense at the initial post-conviction hearing:

---

1. Ms. Katt represented the State; Mr. Pinnow appeared for the Petitioner.

[MS. KATT:] "I uh, I just initially believed that we could prevail on the merits and that I really would not have to address laches. So the State is asking for a continuance uh, to present some laches evidence.

THE COURT: How do you want to do it?

MR. PINNOW: Your Honor, we would continue to object to a continuance for laches. State could have brought their witnesses in today. Uh, the hearing has been scheduled for quite awhile. And their failure to do so means they aren't getting their affirmative defense of laches. It is the defense they have to prove. If they're not prepared to prove it they waive it.

MS. KATT: Your Honor, may I put something on the record for this?

THE COURT: Yes.

MS. KATT: Okay. This is not, I realize it has been on the record uh, on the calendar for awhile. At this point I handle three-hundred-eighty-eight (388) cases. That's what I have in my drawer as of the end of uh, the middle of October. I prepare them generally a day or two (2) in advance. Now, some of the public defenders have been very helpful and will call me in advance and say, gee, are you going to present laches on this, or laches on that. If I can get the transcripts, if I have an opportunity to look at them I can tell pretty much whether I'm going to have laches or not. I had twenty-eight (28) hearings scheduled for this week. Most of those didn't go but I still had to prepare them. And, I think for the record I at least need to make a record. I realize that the State of Indiana has to be ready all the time uh, and I apologize. I try.

THE COURT: Well, the problem for you is the same problem that the State Public Defender's Office has ..." Record at 165–167.

Were this the end of the trial level events, we would agree with Stewart that the State had waived its laches defense. *See* T.R. 8(C); *see also* *Miller v. Greisel* (1974) 261 Ind. 604, 308 N.E.2d 701. But the trial court fashioned a unique response to the State's dilemma:

"[A]nd since both of you agree that probably the case should be decided on the merits, at least initially, and we shouldn't have to get into laches, I would think the State has offered to go forward with that and make it part of the record, the Petitioner objects to it, so let's just let the record go up whichever way I make my ruling as it is now. And then which uh, if I rule favorably for the Petitioner and it's dismissed on the merits then the question of laches is moot. If I rule favorably for the State and the Petitioner takes it up and it's overturned then I think that it should come back for the State to have the opportunity of presentation of laches." Record at 168.

In other words, it appears that the trial court, in order to focus the appeal upon the substantive issue, was willing to allow the State to present laches evidence *after* Petitioner's appeal from the trial court's ruling on the merits. This was a well intentioned but erroneous course. If the Petitioner had prevailed upon appeal, the proper disposition on remand would be vacation of the guilty plea and a trial upon the original theft-by-deception charge, *not* a new evidentiary hearing on the guilty plea challenge presented at post-conviction.

After receiving the trial court's ruling denying post-conviction relief, Stewart did prepare to appeal by filing a Motion to Correct Errors. In it he presented three allegations of error, including error in "[p]ermitting the State to retain its affirmative defense of laches where the State was not prepared to proceed with its affirmative defense at the post-conviction hearing." Record at 113.

The trial court sustained the Motion to Correct Errors following a hearing on the motion and held a second PCR hearing. At the second PCR hearing, the State was allowed to present evidence of laches, over the objection of Stewart's counsel. Thus the question properly is not one of waiver but of whether it was error to allow laches evidence at the second PCR hearing. We hold that it was not.

The purpose of the Motion to Correct Errors is to call to the trial court's attention errors committed at trial in order to give the trial court an opportunity to correct them. *Thompson v. Daviess–Martin County REMC* (1985) 1st Dist.Ind.App., 486 N.E.2d 1102.[2] At the hearing on the Motion to Correct Errors, held March 25, 1987, Stewart's counsel formally objected to the presentation of laches evidence but at the same time requested that if the trial court was going to allow such evidence it be allowed prior to the appeal:

> MR. PINNOW: Your Honor, we would formally object to the State now attempting to present laches on the basis that they did not present laches at the time of the Post Conviction Hearing when they had an opportunity to do so. However, if the Court is going to allow the State to present laches evidence it would be far more preferable to do it now rather than to wait until the matter goes up on appeal on the merits and then comes back."
>
> \* \* \* \* \* \*
>
> [T]he second one is the laches issue, how he would be harmed if he would have to go up on appeal. Essentially the problem is, if he goes up on appeal without the State presenting laches evidence, he has no control over whether the State witnesses [sic] memories further deteriorate or whether any State witnesses would even die or become unavailable. The third ground is no finding of fact. ·
>
> THE COURT: Is there some agreement between you two (2) with what you want me to do with it?
>
> MR. PINNOW: Your Honor, it is Petitioner's opinion that if the Court is willing to allow the State to present laches evidence it should be done before the case goes up on appeal."
> Record at 175–178.

We are unwilling to fault the trial court for correcting its error especially when invited by Stewart to do so. Thus, the trial court did not err in holding a second PCR hearing in which it allowed evidence of laches after sustaining Stewart's Motion to Correct Errors addressed in part to that issue.

### III

■ We turn to the question of whether the State carried its burden of proof as to laches. To prevail the State must prove by a preponderance of the evidence that the Petitioner's delay in filing for post-conviction relief was unreasonable and that the State would be prejudiced by the delay. *Twyman v. State* (1984) Ind., 459 N.E.2d 705. The trial court ruled that the State met its burden. In reviewing this decision we will not reweigh the evidence nor determine the credibility of witnesses. Rather, we consider only evidence favorable to the ruling, together with all reasonable inferences which may be drawn from that evidence. *Harrington v. State* (1984) 1st Dist.Ind.App., 466 N.E.2d 1379.

■ We note at the outset that the mere passage of time is not enough to constitute laches, but it may be a factor. *Harrington, supra,* 466 N.E.2d 1379. In the present case, petitioner sought post-conviction relief addressed to a guilty plea made 14 years earlier. Stewart testified that despite numerous other convictions based on guilty pleas, despite being represented by attorneys at each, and despite being incarcerated at facilities with law libraries, he first learned about post-conviction relief in 1985. He also testified that this was after the State filed Habitual Offender Charges against him. The trial court could reasonably choose to disbelieve Stewart's testimony and find such delay unreasonable. Repeated contacts with the criminal justice system, consultation with attorneys and incarceration in a penal institution with legal facilities are all facts from which a factfinder may infer knowing acquiescence which leads to unreasonable delay. *Perry v. State* (1987) Ind., 512 N.E.2d 841.

---

**2.** Of course as of January 1, 1989, the Motion to Correct Errors was no longer required as a condition precedent to appeal.

As to the element of prejudice, the State presented testimony from several witnesses that indicated the State would be unable to try Smith on his 1971 theft-by-deception charge. Denver Lee, the mechanic on duty at the service station where Stewart allegedly passed an altered bill, could not remember a crime taking place.

The State also presented testimony from David Brockett, from the U.S. Secret Service. Mr. Brockett was not the original investigator but had been assigned to the case approximately one month prior to the second PCR hearing. He testified that he had attempted to locate the altered bills involved in the case but was unsuccessful. Mr. Brockett stated that the file reflected that the bills were sent to "counterfeit division" and that the policy was to destroy them two (2) years after the conclusion of a case. He further testified that although there was an unsigned admission or confession from Stewart, there was no statement from the victim in his file.

Finally the State presented Christopher Levandoski, a PCR paralegal for the Marion County Prosecutor's Office. He testified that he had attempted to locate the file in this cause but could not. He testified further that the policy was to destroy files after ten (10) years. He informed the court that he obtained Denver Lee's name from an official police report which identified him as the victim.

We agree with the trial court that the State presented sufficient evidence of prejudice to support a conclusion that the doctrine of laches warranted denial of post-conviction relief. *Compare Woodford v. State* (1989) Ind., 544 N.E.2d 1355 (insufficient evidence of prejudice where although physical evidence had been destroyed, four witnesses, three of whom were eyewitnesses to the crime, were available to testify) and *Lacy v. State* (1986) Ind., 491 N.E.2d 520 (insufficient evidence of prejudice where no evidence that the State had even attempted to locate files or witnesses) with *Dillon v. State* (1985) 2d Dist.Ind.App., 479 N.E.2d 610, *trans. denied* (sufficient evidence of prejudice where victim could not have remembered who robbed him and in-

vestigators could not have established case because defendant was not apprehended with recently stolen property); *Pinkston v. State* (1985) 3d Dist.Ind.App., 479 N.E.2d 79, *trans. denied* (evidence sufficient where State could not find file, investigator had no independent recall of events, and photographic display from which defendant identified was destroyed); and *Harrington, supra,* 466 N.E.2d 1379 (evidence sufficient where accomplice dead, sheriff's files could not be located and chief investigating officer had no independent recollection of events.)

In *Mottern v. State* (1984) 1st Dist.Ind. App., 466 N.E.2d 488, 490, the court held that the requisite prejudice is demonstrated when it would be "impossible or extremely difficult to present" the prosecution's case. In *Woodford v. State, supra,* 544 N.E.2d 1355, the opinion reflects not only the absence of difficulty in prosecuting but, to the contrary, shows that testimony which would readily permit a conviction was relatively easy to obtain.

■ Prejudice is not merely the impossibility of presenting any case at all or the prospect of difficulty in locating and obtaining physical evidence or witnesses to testify. If reasonable likelihood of successful prosecution is materially diminished by the passage of time attributable to the defendant's neglect, such may be deemed a sufficient demonstration of prejudice. *See Kindred v. State* (1987) 1st Dist.Ind.App., 514 N.E.2d 314, 318, *trans. denied* (prejudice may be shown if trial would result in testimony not "nearly as effective as the original live witnesses.")

That is the case before us. The alleged victim, Denver Lee—the *only* alleged victim of the crime—could not remember the incident at all. Unlike *Woodford, supra,* we know of no other witnesses to the crime or witnesses who could reasonably be obtained by the State to implicate Stewart. The record contains names of some persons who may or may not have had relevant and admissible testimony. The mere possibility that there may be some witnesses somewhere who could testify concerning the

matter does not mean that the undue delay has not resulted in the requisite prejudice.

The judgment denying post-conviction relief is affirmed.

RATLIFF, C.J., concurs.

BUCHANAN, J., concurs in result.