Keith WARE, Appellant,

v.

STATE of Indiana, Appellee.

No. 45S00–8904–PC–290.

Supreme Court of Indiana.

March 13, 1991.

Susan K. Carpenter, Public Defender, Laurel A. Elliott, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

In 1975, appellant entered a plea of guilty to Murder in the Perpetration of a Robbery. Appellant had entered into a plea agreement with the State under which they would drop a charge of first degree murder in the killing of a police officer, which called for a death sentence. The State further agreed to dismiss a third count, of robbery, in the instant case and would dismiss three other robbery cases pending against appellant.

■ At the time the State offered this plea agreement to appellant, his attorney advised him to accept it in order to avoid the death penalty. The attorney was fully aware that at that time the case of *Woodson v. North Carolina* (1976), 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 was pending in the Supreme Court of the United States and that it challenged the constitutionality of North Carolina's death penalty statute. However, after studying the case and the Indiana death penalty statute, counsel informed appellant that in his opinion North Carolina's statute might well be found to be constitutional and further that even if it were declared to be unconstitutional, it was not sufficiently similar to the Indiana statute to lead him to believe that the latter also would be declared unconstitutional.

Appellant now claims that but for this representation made by his trial counsel, he would not have entered into the plea agreement. He contends that his counsel was ineffective for misreading the North Carolina and Indiana statutes and for not realizing that the United States Supreme Court would declare North Carolina's statute unconstitutional and that the Indiana statute consequently would fall. It is obvious that counsel had no way of predicting for appellant the outcome of the cases. He merely was apprising him of the situation and recommending that he accept the plea bargain to avoid the possibility of the death penalty.

Appellant's trial counsel would have been much more deserving of criticism if he had recommended that appellant stand trial resulting in the death penalty, and the Supreme Court then had decided the North Carolina statute was constitutional. He thereby would have subjected his client to the death penalty rather than accepting the plea bargain offered by the State. The post-conviction court accurately evaluated this situation when in his findings he stated: "The failure of counsel to accurately predict the future rulings of the State and Federal Appellate Courts cannot be said to be outside the bounds of reason under prevailing professional norms." We find that counsel's performance in this regard fell well within the bounds of "reasonably effective assistance" as set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

Under circumstances such as this, this Court will not speculate as to what might have been the most advantageous strategy. *See Davis v. State* (1983), Ind., 446 N.E.2d 1317. Appellant has failed to show ineffective representation by counsel.

■ Appellant claims the trial court erred when it permitted the State to raise the affirmative defense of laches after the State had represented to the trial court that it was unprepared to present a defense of laches and asked for a continuance. The court granted the continuance and subsequently accepted the State's affirmative plea of laches. Appellant contends the

State had waived its equitable defense of laches by not proceeding on laches at the initial hearing. To support his position, appellant cites *Stewart v. State* (1990), Ind. App., 548 N.E.2d 1171 and *Boykins v. State* (1984), Ind.App., 470 N.E.2d 765.

In *Stewart,* the ruling on the post-conviction relief petition's first hearing was set aside on a motion to correct error. At the second hearing, the State for the first time presented evidence of laches. The trial court denied relief. On appeal, appellant took the position that the State had waived the defense of laches by failing to present the evidence at its first opportunity. However, the Court of Appeals held that this was not a matter of waiver and affirmed the trial court.

In *Boykins,* the Court of Appeals held that appellant was entitled to relief on the merits of his petition, rejecting the State's suggestion that the case be remanded for a ruling on their affirmative defense of laches. The Court of Appeals pointed out that although the State had raised the defense of laches it had introduced no evidence as to its prejudice by reason of a four-year delay. Therefore, the Court of Appeals reasoned this was analogous to a reversal for insufficient evidence and that the State should not have a second shot at establishing their laches defense when they had failed to present adequate evidence in the first instance.

We find neither *Boykins* nor *Stewart* is applicable to the case at bar. Here, after filing its first affirmative defense of laches, the State informed the court that it was unprepared at that time to go forward with that defense and requested a continuance. It clearly was within the prerogative of the trial court to grant such a continuance. *See Woods v. State* (1989), Ind., 547 N.E.2d 772. We find no error in permitting the State to present laches.

■ Appellant claims the State did not sustain its burden of proving laches by a preponderance of the evidence. Appellant contends that although nearly ten years had expired between his plea of guilty and the filing of his post-conviction relief petition, he nevertheless had attempted on sev-eral occasions to seek relief, but his various contacts with the Public Defender's office had resulted in replies that he had no merit in his case and they would not represent him. He eventually filed his post-conviction relief petition *pro se.* It was then that the Public Defender intervened to represent appellant.

The evidence shows that appellant had received a transcript from the trial court within a year of his plea of guilty, and although the Public Defender had reviewed the case and found it to be without merit, appellant was free at any time to file his petition *pro se.* In fact, as early as April 22, 1976, the trial court commissioner, Richard J. Conroy, answered a letter from appellant telling him that he would have to file a petition for post-conviction relief or have the State Public Defender file one on his behalf. Thus, a factual situation was presented to the post-conviction court as to whether appellant had been diligent in seeking relief. This Court will not reweigh conflicting evidence; such is the prerogative of the trial court. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670.

Appellant also claims the State failed to prove prejudice resulting from the delay. State's witnesses testified they were unable to locate the witnesses from the first trial, with the exception of a codefendant who had made a statement against appellant and now was residing in Rochester, New York. There was other evidence that one of the missing witnesses might still be in the Gary area. Citing this fact, appellant argues that the State's officers did not use due diligence in an attempt to find the missing witnesses. Here again, we have statements of fact submitted to the trial court, whose findings this Court will not second-guess. *Id.*

Appellant further contends that because the State in fact did know that one of the codefendants who had made a statement against appellant was residing in Rochester, New York, they could in fact have made a case, noting that the uncorroborated testimony of an accomplice will support a conviction, citing *Barnette v. State* (1988), Ind., 524 N.E.2d 1282. However,

the trial court was justified in finding that given the passage of time, the absence of other witnesses, and the possibility of the known codefendant recanting his prior statement, the State in fact was in an extremely poor position to reprosecute appellant. Again, we will not reweigh these facts.

■ Appellant claims his plea of guilty was not knowingly and voluntarily entered because he had no way of knowing that the trial court would violate the plea agreement by a recommendation to the Governor that appellant not be considered for commutation of sentence. A very similar situation was presented to this Court in *Mott v. State* (1980), 273 Ind. 216, 402 N.E.2d 986. In that case, we rejected Mott's claim of error resulting from the trial court's recommendation that Mott receive no parole after accepting his plea of guilty. We held that such a statement by the trial judge was only a recommendation because the Department of Correction had the exclusive power to grant or deny parole. The same reasoning pertains to the Governor's constitutional right to commute sentences.

It is entirely proper and a common practice for both prosecuting attorneys and judges to make recommendations to the parole board or clemency commission and to the Governor concerning the possibility of clemency or parole. This may be done at the time of sentencing or at any time prior to the action of the parole board or the Governor. We find no violation of the plea agreement in making such a recommendation.

■ Appellant claims the post-conviction judge should have recused himself when, in granting the State's continuance in order to prepare a laches defense, he stated in substance that because appellant had taken ten years to get to court with his post-conviction relief petition, he did not perceive appellant would be harmed by a short continuance favoring the State. Appellant takes the position that this statement by the trial judge was tantamount to a finding that appellant in fact was guilty of laches. We read no such implication into the trial court's comments. He had not yet seen the State's plea of laches nor heard evidence thereon. His comment can be taken only to be an observation of the length of time involved and the comparatively short time that a continuance for the State would involve.

In order to prevail on this issue, there must be a showing that the record discloses actual bias and prejudice of the judge against appellant. *Lasley v. State* (1987), Ind., 510 N.E.2d 1340. We find nothing in this record to sustain such proof. The mere assertion that certain adverse rulings by a judge constitute bias and prejudice does not establish the requisite showing. *Thomas v. State* (1985), Ind., 486 N.E.2d 531.

In the case at bar, the trial judge has made accurate and complete findings of fact and conclusions of law. The judge addressed himself to every point at issue in the cause in a very professional manner. We see absolutely no hint of bias or prejudice on his part. We find no error in his proceeding to hear evidence in this case.

The trial court is affirmed.

SHEPARD, C.J., and DICKSON, J., concur.

DeBRULER and KRAHULIK, JJ., concur in result without separate opinion.