James SLONE, Appellant–
Defendant Below,

v.

STATE of Indiana, Appellee–
Plaintiff Below.

No. 45A03–9108–PC–257.

Court of Appeals of Indiana,
Third District.

April 21, 1992.

David M. Welter, Langer & Langer, Valparaiso, for appellant-defendant.

Linley E. Pearson, Atty. Gen. of Indiana and Mary Dreyer, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

STATON, Judge.

James Slone appeals the denial of his petition for post conviction relief, raising five issues for our review. We consolidate and rephrase those issues as the following two:

I. Whether Slone's petition for post conviction relief is barred by the equitable doctrine of laches.

II. Whether Slone's guilty plea in the underlying conviction was knowing and voluntary.

We reverse.

On January 14, 1987, pursuant to a plea agreement, Slone pled guilty to one count of driving while intoxicated. On February 6, 1991, Slone filed his petition for post conviction relief, alleging that his guilty plea was not entered knowingly and voluntarily, and that there was no proper factual basis for his plea. The State answered Slone's petition asserting waiver, laches, estoppel, and failure to state a claim for relief. After a hearing, the post conviction court denied Slone's petition, finding that the State had proven its case of laches. However, upon Slone's motion for specific findings and conclusions, the court entered supplemental findings and conclusions on May 21, 1991. It is from this judgment that Slone now appeals.

## I.

### Laches

In its supplemental order, the post conviction court agreed with the State's contention that laches barred Slone's claim. Slone argues that the evidence was not sufficient to support the State's defense on this basis, while the State asserts that sufficient evidence of probative value supports the laches defense.

■ Although the right to post conviction relief is available at any time, this right may be directly or impliedly waived. *Smith v. State* (1991), Ind.App., 565 N.E.2d 1114, 1115, *trans. denied* (citing *Perry v. State* (1987), Ind., 512 N.E.2d 841, 843, *reh'g denied*). Thus, the State may raise the affirmative defense of laches in a post conviction proceeding. *Id.* "In order for the doctrine of laches to bar relief, the State must prove by a preponderance of the evidence 1) that the petitioner unreasonably delayed in seeking relief, and 2) that the State has been prejudiced by the delay." *Id.*

■ A finding of laches is reviewed as any other sufficiency question; that is, we consider only the evidence most favorable to the judgment and all reasonable inferences to be drawn therefrom, and we will affirm if there is probative evidence to support the decision of the post conviction court. *Id.* In so doing, we may not reweigh the evidence or reassess witness credibility. *Id.*; *Taylor v. State* (1986), Ind.App., 492 N.E.2d 1091, 1092.

■ While the mere passage of time is not enough to constitute laches, it may be a factor. *Stewart v. State* (1990), Ind.App., 548 N.E.2d 1171, 1175, *trans. denied*. Repeated contacts with the criminal justice system, consultation with attorneys and incarceration in a penal institution with legal facilities are facts from which a trier of fact may infer the knowing acquiescence giving rise to the unreasonable delay. *Id.*

In its supplemental order of May 21, 1991, the post conviction court concluded:

4) Unreasonable delay is established because: a) defendant knew the terms of the plea agreement and received exactly the disposition for which he bargained—a conviction for a reduced charge and probation. b) Defendant delayed inquiring into PCR remedies because he was perfectly content with the disposition. PCR is an equitable remedy. No wrong occurred in this case and therefore no remedy is appropriate. c) The defendant, who was able to read and write the English language and was represented by counsel, *chose* not to read the Waiver of Rights form.

Record, pp. 119–20 (emphasis in original).

Although the post conviction court may be correct in its conclusion that Slone was satisfied with the result, i.e., that he was content with the penalty imposed as a result of the plea agreement, this finding is wholly irrelevant to the determination of whether Slone "knowingly acquiesced" in a violation of his rights. If it were otherwise, the laches defense would defeat every case in which the conviction was the result of a plea agreement, regardless of whether the defendant's constitutional rights had been violated.

■ The State was required to show that Slone displayed conscious indifference or procrastination upon the discovery of an entitlement to relief through post conviction procedures. *See Ray v. State* (1986),

Ind.App., 496 N.E.2d 93, *aff'd by Perry, supra,* at 843 (plea of guilty on misdemeanor and resultant fine is insufficient, standing alone, to prove defendant was on notice as to the validity of his plea and conviction).

█ Considering the factors articulated in *Stewart, supra,* we conclude that the evidence was not sufficient to prove that Slone was aware of the availability of post conviction remedies. It is not disputed that Slone had only two contacts with the criminal justice system, and he was not incarcerated for his offenses. The record indicates that Slone consulted with his attorneys in a limited fashion prior to entering his guilty pleas. After Slone's most recent conviction, only three years passed before he became aware that his rights may have been violated, at which time he filed his petition for post conviction relief. Most telling, however, is the post conviction court's initial ruling on Slone's petition. At the close of the hearing, the court opined with respect to the delay: "So from one standpoint you may think that's not unreasonable because [Slone] didn't know there was that option." In light of the express finding that Slone was not aware of his post conviction options, he could not have knowingly acquiesced to the purported violation of his rights. "Unless a petitioner has knowledge of a defect in his conviction or of the means to seek relief from the conviction, he can seldom be said to have delayed unreasonably in seeking relief." *Perry, supra,* at 843. Because the State failed to carry its burden in this regard, the doctrine of laches does not bar Slone's claim.[1]

## II.

### Voluntariness of Guilty Plea

Slone next contends that his guilty plea in the 1987 proceeding was not knowing, voluntary, or intelligent due to the trial court's inadequate advisement of certain constitutional rights. The State responds that Slone's claim is without merit.

█ In *White v. State* (1986), Ind., 497 N.E.2d 893, our supreme court articulated the burden that a petitioner must carry when claiming that the guilty plea was involuntary and unintelligent. The petitioner must plead specific facts from which a finder of fact could conclude by a preponderance of the evidence that the trial judge's failure to fully inform the defendant of his rights rendered the defendant's decision involuntary or unintelligent. *Id.* at 905. However, this standard does not affect the omission of guilty plea advisements concerning the right to a jury trial, the right of confrontation and the right against self-incrimination preserved under *Boykin v. Alabama* (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. If the trial court does not inform the defendant of his *Boykin* rights, the conviction will be vacated without a showing of prejudice to the defendant. *White, supra,* at 905; *Stamm v. State* (1990), Ind.App., 556 N.E.2d 6, 9; *Duncanson v. State* (1990), Ind.App., 548 N.E.2d 838, 840–41.

Our review of the transcript generated at Slone's guilty plea hearing reveals only the

---

1. The dissent misconstrues our holding by emphasizing the "delay" between the guilty plea and Slone's request for the transcript in anticipation of filing his petition for post conviction relief (a period of three years and four months). However, to attribute this "delay" to Slone would directly contravene the ruling of our supreme court in *Perry, supra.* The post conviction court expressly found that Slone was unaware of his remedies. Record, p. 102. As we stated above, a petitioner can "seldom be said to have delayed unreasonably in seeking relief" when he is unaware of the means to seek relief. *Perry, supra,* at 843. Thus, the only delay that can be attributed to Slone is eight months, or the period between the date he requested the transcript and the date he filed his petition for post conviction relief. Any doubt as to the finding that there was no unreasonable delay should be dispelled by the following language of the post conviction court: "I think in this case we almost have a situation where the delay may be unreasonable from the State's standpoint *but the delay is completely reasonable from the defendant's standpoint.*" Record, p. 99 (emphasis added). Moreover, contrary to the dissent's conclusion, the post conviction court made absolutely no finding with respect to Slone's limited contact with the criminal justice system. Thus, the post conviction court's findings are wholly insufficient to sustain the conclusion of unreasonable delay in this case.

following advisement of constitutional rights:

> BY THE COURT: Do you also understand by pleading guilty, you are waiving or giving up your constitutional rights?
>
> BY THE DEFENDANT: Yes, sir.

Record, p. 108.

At the conclusion of the hearing, the trial judge asked defense counsel to submit a Waiver of Rights form signed by Slone. The list of rights included the *Boykin* advisements. The State asserts that the foregoing amounts to an adequate advisement of Slone's constitutional rights. We disagree.

For a waiver to be valid, it must be an intentional relinquishment of *known rights and privileges. Hunt v. State* (1986), Ind.App., 487 N.E.2d 1330, 1333 (citing *Johnson v. Zerbst* (1938), 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461) (emphasis supplied). In this case, there is no evidence that Slone understood the rights he purported to waive. Although Slone signed the standard waiver form, he apparently did so after pleading guilty. Even assuming that Slone signed the form prior to entering his plea, the record discloses that the trial court did not receive it until the hearing was concluded. Thus, the court did not question Slone as to his understanding of the waiver form.

This case is analogous to *Hunt, supra,* in which the defendant also signed a prepared form waiving his constitutional rights. In *Hunt,* the court of appeals found that the trial court's failure to ask the defendant any questions concerning the defendant's understanding of the rights he waived, whether he had read the form, or whether he was literate in the English language precluded a finding that the plea was entered voluntarily and knowingly.

> This lack of inquiry by the trial judge evidences the fact the judge could not have made an independent determination of [the defendant's] understanding of the rights he was waiving at the time of the guilty plea hearing.

*Id.* at 1334. Despite the fact that the waiver form in *Hunt* contained the statement that "the ... defendant advises the court that he understands the above and waives his right to be formally advised by the judge ...," and that the judge asked the defendant if the signature on the form was his, the court of appeals found the evidence was not sufficient to support the conclusion that the defendant understood his rights. *Id.* at 1334–35.

In *Williams v. State* (1975), 263 Ind. 165, 325 N.E.2d 827, *reh'g denied,* our supreme court affirmed the denial of post conviction relief where the defendant executed a Waiver of Rights form. In *Williams,* however, the form included affirmations regarding the defendant's education and his ability to read, write, and understand the English language. Prior to accepting the plea, the prosecutor asked the defendant if he had signed the form, and whether he understood it. Moreover, the defense counsel stated that the defendant had a tenth grade education, studied in the army, and understood the charge, the penalty, *and the rights he was waiving. Id.* at 171, 325 N.E.2d at 830. Thus, in *Williams,* the record contained a foundation for the trial court's independent determination that the defendant knowingly waived his constitutional rights.

In this case, the record does not provide such a foundation. Neither the State nor defense counsel questioned Slone as to his understanding of his constitutional rights. Aside from the singular question put to Slone of whether he understood his rights, the trial court had no evidence before it to conclude that Slone was meaningfully informed of those rights before that time. It is not disputed that the trial court did not question Slone about the Waiver of Rights form, inasmuch as the form was not submitted until the conclusion of the hearing. Thus, we must conclude that the trial court erred in not granting Slone's petition for post conviction relief.

*Reversed.*

SHIELDS, J., concurs.

HOFFMAN, J., dissents and files separate opinion.

**640**

HOFFMAN, Judge, dissenting.

I respectfully dissent from the majority's decision that the doctrine of laches does not bar Slone's claim.

With respect to the issue of unreasonable delay, the majority recognizes that repeated contacts with the criminal justice system, consultation with attorneys, and incarceration in a penal institution with legal facilities are all facts from which a trier of fact may infer knowledge of, and acquiescence in, the defect in a guilty plea and the means of relief. *McCollum v. State* (1991), Ind.App., 569 N.E.2d 736, 738. Slone did not spend time in a penal institution; however, such does not defeat the inference that he knowingly acquiesced in the delay. *See Moser v. State* (1990), Ind. App., 562 N.E.2d 1318, 1319–1320. The State's evidence showed that Slone had two contacts with the criminal justice system and that he consulted with and was represented by counsel on both occasions. Moreover, Slone waited over four years before filing his petition for post-conviction relief, not three years as the majority suggests. These factors justify an inference that Slone knowingly acquiesced in the delay and that, in light of the circumstances, the delay was unreasonable.

In footnote 1 of its opinion, the majority claims Slone's delay in filing was not unreasonable because the trial court "expressly found that Slone was unaware of his remedies." The trial court made no such finding; rather, it expressly found that the delay was unreasonable because Slone had not been "wronged" in any way and, thus, had no reason to seek relief. A defendant's satisfaction with the result of his plea bargain is, as the majority notes, irrelevant to a laches determination; however, as discussed above, the length of the delay, Slone's contacts with the criminal justice system, and his consultations with attorneys support the trial court's finding of unreasonable delay. The State need prove laches only by a preponderance of the evidence, not beyond a reasonable doubt. *McCollum* at 738. The majority is reweighing the evidence and rejudging the credibility of witnesses, matters outside the province of a court of review. *Id.*

As for the prejudice issue, the State showed that it would be extremely difficult at the time of the post-conviction hearing to reprosecute the charge to which Slone had pled guilty. At the post-conviction hearing, the State called the two police officers who had been involved in Slone's arrest. Neither of the officers had an independent recollection of the arrest despite attempts to refresh their memories with their arrest reports. The officers were also unable to identify Slone as the person they had arrested on the date in question. In *Moser*, this Court found such evidence sufficient to support a finding of prejudice, *Id.* at 1320; therefore, I would affirm the trial court's finding of laches and denial of post-conviction relief.