

APPELLANT *PRO SE*

Jay R. Thompson
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jay R. Thompson,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent,*

May 8, 2015

Court of Appeals Case No.
31A01-1408-PC-350

Appeal from the Harrison Circuit
Court
The Honorable Glenn Hancock,
Special Judge
Case No. 81-S-62

**Bradford, Judge.**

# Case Summary

[1]     Appellant-Petitioner Jay Thompson was convicted of two counts of murder and
conspiracy to commit burglary and sentenced to an aggregate 120-year term.
On appeal, the Indiana Supreme Court affirmed the sentence in 1990.
Thompson filed a petition for post-conviction relief ("PCR") in 1992.

Thompson filed several amendments to his petition in the subsequent twenty years but neglected to prosecute the petition until 2014. Appellee-Respondent the State of Indiana ("the State") filed a motion to dismiss pursuant to the doctrine of laches and the PCR court granted the motion. On appeal, Thompson argues that laches can only be used as a defense to a PCR petition based on delay in filing of the petition and may not be based on delay in prosecuting the petition. We disagree and affirm the decision of the PCR court.

# Facts and Procedural History

[2] The facts surrounding Thompson's underlying offenses and trial were provided by the Indiana Supreme Court in Thompson's direct appeal.

> The testimony and evidence at trial showed that Richard Dillon and Defendant Jay R. Thompson planned to burglarize the home of William and Mary Hilborn in Petersburg, Pike County, Indiana, about three days prior to March 8, 1982. On Sunday, March 8, 1982, Dillon and Thompson drove to Petersburg, observed the area of the Hilborn home and passed the church the Hilborns attended. Apparently presuming that the Hilborns were still in church, they parked Thompson's green Pinto automobile some blocks from the Hilborn residence and proceeded there on foot. When they arrived, they found the Hilborns at home so they obtained entry by pretending to be looking for one Eddie Beadles. After being admitted to use the phone, they accosted the Hilborns to obtain money that was known to be kept by Hilborns in their home. Dillon possessed a "buck" knife and Thompson a folding pocket knife. During the confrontation and scuffle Dillon stabbed each of the Hilborns with his "buck" knife, injuring them. After stabbing Mr. Hilborn, both Dillon and Thompson forced Mary Hilborn, by holding a knife under her chin, to obtain money for them. Dillon then cut the telephone line and stabbed Mrs. Hilborn. After she fell to the floor, Dillon cut her throat with the "buck" knife. As they were leaving the house, Thompson stopped near the kitchen

door and told Dillon they could not leave until they were sure the Hilborns were dead. Thompson then stabbed both Hilborns to ensure they were dead. According to Dr. Pless, the pathologist, the fatal wound to William Hilborn's chest and heart was not made by the "buck" knife but by a knife similar to or the same as the folding knife carried by Thompson. The knife's angle of entry into the chest indicated that the assailant was kneeling on the right side of William Hilborn and the size of the wound and time inflicted indicated defendant Thompson inflicted the wound to the chest and heart of William Hilborn with the folding knife. Dr. Pless further testified the wound in Mrs. Hilborn's back indicated she was lying on her side at the time of the infliction of the back wound which pierced her aorta. The size of the wound in the back indicated the use of a knife smaller than the "buck" knife. The blood on her dress around the back of her shoulders, the back of her neck and on the carpet immediately adjacent to her back and shoulders, indicated she bled from the neck onto the carpet while lying face up. The position of her body indicated she was rolled to her left prior to being stabbed in her back. Dillon at first denied any complicity in these crimes but later testified for the State and implicated Thompson in the two murders. Dillon's testimony was corroborated by police investigation which revealed human blood on Defendant Thompson's jeans and human blood similar to the victim's on one of Defendant's gloves. Thompson was a seventeen (17) year-old juvenile when he committed these crimes, but the juvenile court waived jurisdiction and he was tried as an adult. The jury found Defendant guilty of the murders but did not recommend the death penalty. The trial judge, however, found statutory aggravating circumstances to exist and imposed the death penalty on Defendant Thompson.

*Thompson v. State*, 492 N.E.2d 264, 267 (Ind. 1986). The Court affirmed Thompson's convictions but vacated the death sentence due to "technical deficiencies." *Id.* at 278. On remand, Thompson was sentenced to consecutive sixty-year terms for each murder and a concurrent thirty-year sentence for conspiracy to commit burglary resulting in injury, which was affirmed by the

Indiana Supreme Court on appeal. *Thompson v. State*, 552 N.E.2d 472 (Ind. 1990).

[3] On August 17, 1992, Thompson filed a PCR petition which raised twelve issues concerning denial of due process. Thompson neglected to prosecute the petition until February 11, 2005 when he requested to proceed *pro se* by affidavit. On March 8, 2005, the State filed an Answer which raised the defense of laches, arguing that it was prejudiced by Thompson's delay in prosecuting his PCR petition. Thompson filed four separate amendments to his petition on various dates between May of 2005 and November of 2006. In 2007, the PCR court ordered DNA testing on evidence from Thompson's trial based on requests from both parties.

[4] Thompson took no further action to prosecute the PCR petition until July of 2012 when a new attorney appeared for Thompson. On December, 26, 2013, Thompson filed a fifth amendment to his PCR petition which raised several new claims of error as well as an ineffective assistance of counsel claim. The State again raised the affirmative defense of laches in response. In support of its laches argument, the State claimed that it was prejudiced by Thompson's delay because several individuals who were involved in Thompson's trial and who would be needed to address the merits of his PCR claims had died, including Thompson's trial and appellate counsel, the witness who discovered the victims' bodies, the first responder, and the coroner. Thompson stipulated that "the vast majority of the [State's] witnesses in this case are deceased." Tr. p. 48.

Following a hearing on laches, the PCR court granted the State's motion to dismiss Thompson's petition. The PCR court found as follows:

> 1. That the parties agree that the issue of laches should be addressed before addressing further issue of law in Petitioner's Amended Petition for [PCR].
>
> 2. That the parties stipulated that the delay of the Petition for [PCR] has resulted in prejudice to the State.
>
> 3. That the State's ability to defend against an ineffective assistance claim is prejudiced by [Thompson's trial and appellate counsel] Mr. Dodd's passing in 2011.
>
> 4. That the ineffective assistance claim has been previously asserted on or before July, 2005.
>
> 5. That any other issue in Petitioner's Amended Petition, that has not been previously adjudicated, has placed the State in a position of prejudice by the stipulation of the parties and by the delay in bringing such allegation to a judicial determination.
>
> 6. That Petitioner has shown his knowledge of right to seek [PCR] by his original filing in 1992, his numerous subsequent pro se filings and the filings by various attorneys who have represented him post-conviction.
>
> 7. That the Petitioner has had substantial contact with legal counsel as the record indicates he has been represented by at least six attorneys.
>
> 8. That the Petitioner has been incarcerated at a facility with access to law library and apparently has used such law library to prepare numerous lengthy pro se pleadings.
>
> 9. That all of the above findings convince the Court that the delay is unreasonable under the circumstances and that such delay has resulted in prejudice to the State and that the State's assertion of laches as a basis for dismissal of the Petition for [PCR] should be granted.

Appellant's App. pp. 13-14.

# Discussion and Decision

"For laches to bar relief, the State must prove by a preponderance of the evidence, first, that the petitioner unreasonably delayed in seeking relief and second, that the State has been prejudiced by the delay." *Douglas v. State*, 634 N.E.2d 811, 815 (Ind. Ct. App. 1994) *opinion corrected on reh'g*, 640 N.E.2d 73 (Ind. Ct. App. 1994) (quoting *Perry v. State*, 512 N.E.2d 841, 843 (Ind. 1987) *reh'g denied*).

> [Laches] is the neglect for an unreasonable length of time, under circumstances permitting diligence, to do what in law should have been done. It is an implied waiver arising from knowledge of existing conditions and an acquiescence in them, the neglect to assert a right, as taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to the other party and thus acting as a bar in a court of equity.

*Id*. (quoting *Twyman v. State*, 459 N.E.2d 705, 712 (Ind. 1984)).

A finding of laches is reviewed as any other sufficiency question; that is, we consider only the evidence most favorable to the judgment and all reasonable inferences to be drawn therefrom, and we will affirm if there is probative evidence to support the decision of the PCR court. *Slone v. State*, 590 N.E.2d 635, 637 (Ind. Ct. App. 1992). In so doing, we may not reweigh the evidence or reassess witness credibility. *Id*.

## Whether the Doctrine of Laches Applies to Delay in Failing to Prosecute a Filed PCR Petition

The facts of the instant case are analogous to those we addressed in *Douglas*. *Id*. In 1986, Douglas filed his PCR petition which was subsequently amended three times by his attorney, ultimately substituting every issue alleged in the original

petition. *Id*. at 815. A hearing on the petition was finally held in 1992 and the PCR court dismissed the petition based on the doctrine of laches. *Id*. In its decision, the PCR court focused on the delay between the filing of the petition and the hearing on the petition. On appeal, we noted that, "[w]e have found no cases, and the State directs us to none, that consider the delay between the filing of the petition and the hearing on the petition as the relevant time period for purposes of laches." *Id*. at 815-16. However, we reversed the PCR court's decision to dismiss the decision based on the fact that Douglas was not personally responsible for the delay.

> From [1985] until 1991, Douglas was represented by the State Public Defender's Office. After waiting more than four years for action on his petition, Douglas hired private counsel to proceed with his petition. We refuse to penalize Douglas for the delays caused by the Public Defender's Office. One arm of the State (the Prosecutor) may not take advantage of a delay created by another arm of the State (the Public Defender) to the detriment of the defendant. While we recognize the burdensome caseload of the Public Defender's Office and the high turnover of attorneys resulting in delays, as between a defendant and the State, the defendant will not be penalized for the delays. The PCR court's findings do not support the conclusion that Douglas unreasonably delayed seeking relief.

*Id*. at 816.

[9] Thompson argues that according to *Douglas* a laches defense can only preclude a PCR petition when there is unreasonable delay between the final decision of the trial court and the original filing of the PCR petition. This interpretation suggests that any delay *after* filing a PCR petition, no matter the length, can never support a laches defense. We do not agree. Earlier in the *Douglas*

decision, we noted that "[t]he PCR court also found that Douglas filed his petition on September 25, 1986, and that Douglas's attorney filed three amendments and substituted every issue alleged in the original petition. Thus, the delay in filing a petition has been from petitioner's conviction in 1983 until 1992." *Id.* at 815. (record citation omitted). Therefore, we acknowledged delay between the filing of and hearing on the petition. We did not find that such a delay was immaterial, as Thompson suggests; rather, we found that the delay was not the fault of the petitioner and so not unreasonable.

[10] For its part, the State argues that Thompson's failure to prosecute his petition constituted an unreasonable delay in seeking relief. At the July 2, 2014 PCR hearing regarding laches, the State argued, "if you were to apply [Thompson's] reasoning, then if a person is convicted today and files a PCR tomorrow[,] he can sit on his hands for twenty years later, wait for witnesses to die, wait for the case to go to crap and then say, [']no laches[']." Tr. p. 48. Although it is dicta, Judge Baker's concurring opinion in *Mast v. State*, 914 N.E.2d 851 (Ind. Ct. App. 2009) addresses a similar situation and reflects the State's sentiment.

> Here, the underlying crime occurred and Mast pleaded guilty in 1989. Mast filed a pro se petition for post-conviction relief in 1990 and withdrew it in 1994. He filed a second pro se petition for post-conviction relief in 2001. This petition was later amended by counsel in 2006. In 2008—nearly twenty years after the crime occurred—a hearing was held on Mast's petition. I believe that if the State had raised this [laches] argument, it would have prevailed. Inasmuch as it declined to do so, however, I fully concur with the majority.

*Id.* at 858. We find this reasoning persuasive. Although the particular facts of some cases may present a distinction between a delay in filing and a delay in

prosecuting a PCR petition, we see no reason to draw such a distinction here as the prejudice to the State would be the same in either case.

## Whether Thompson's Delays in Prosecuting his PCR Petition were Unreasonable and Whether the State was Sufficiently Prejudiced

[11] The party raising a laches defense must show that (1) the opposing party unreasonably delayed seeking relief and (2) the delay caused prejudice to the party raising the laches defense. *Douglas*, 634 N.E.2d at 815. "Although lapse of time does not in and of itself constitute laches, a long delay in filing for post-conviction relief may be sufficient to infer that the delay was unreasonable." *Kindred v. State*, 514 N.E.2d 314, 317 (Ind. Ct. App. 1987).

[12] In *Kindred*, this court held that petitioner's eighteen-year delay in filing PCR petition was unreasonable. *Id*. at 318. In *Mast*, Judge Baker reasoned that a delay of eighteen years in prosecuting a PCR petition would be sufficient to support a laches defense. 914 N.E.2d at 858. Thompson argued only that a delay in prosecuting a PCR petition could not support a laches defense–an argument we have rejected–and he provided no argument as to why his twenty-two-year delay in doing so was not unreasonable. Furthermore, Thompson stipulated that the State was prejudiced by the delay as a result of "the vast majority of the [State's] witnesses in this case [being] deceased." Tr. p. 6. There was sufficient probative evidence to support the PCR court's finding of laches and, as such, we will not disturb that finding.

The judgment of the PCR court is affirmed.

Vaidik, C.J., and Kirsch, J., concur.