## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 28 2017, 9:30 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT, PRO SE

Steven Tuck
Pendleton Correctional Facility
Pendleton, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Steven Tuck,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 28, 2017

Court of Appeals Case No.
79A02-1511-PC-2032

Appeal from the Tippecanoe
Superior Court

The Honorable Randy J. Williams,
Judge

Trial Court Cause No.
79D01-0008-PC-2

**Pyle, Judge.**

# Statement of the Case

Steven Tuck ("Tuck") appeals the post-conviction court's order granting the State's motion to dismiss Tuck's petition for post-conviction relief pursuant to the equitable doctrine of laches based on his failure to prosecute his post-conviction petition. Tuck argues that the State failed to prove that he unreasonably delayed the prosecution of his post-conviction petition. Concluding that Tuck has failed to show that the post-conviction court erred by dismissing his post-conviction petition based on laches, we affirm the post-conviction court's judgment.

We affirm.

# Issue

Whether the post-conviction court erred by determining that Tuck's post-conviction claims were barred by the doctrine of laches.

# Facts

The facts of Tuck's crimes were set forth in the memorandum decision from his direct appeal as follows:

> Facts favorable to the judgment show that Fusiek met Tuck in late 1995 or early 1996. Fusiek visited Tuck's apartment where Fusiek, through a friend[,] bought cocaine from Tuck. Later Fusiek bought cocaine directly from Tuck. Fusiek stopped using drugs, but then resumed use of cocaine and bought it from Tuck for three months toward the end of 1996. Fusiek also bought cocaine for others and retained a portion for his own use. For the first three months Fusiek would drive Tuck to Chicago in exchange for cocaine.

Two of Fusiek's buyers were confidential informants for Detective Weast. Weast, on two occasions in December, 1996, arranged sales of cocaine between Fusiek and Weast's confidential informants. In December, 1997, Officer Davis approached Fusiek to work as a confidential informant. Fusiek made two controlled buys in early 1998.

Cassell Blackburn regularly purchased cocaine from Tuck through an intermediary by the name of Kenneth Josey. Additionally, Kris Holtsclaw would buy from Tuck to supply a Michael Alexander. Holtsclaw bought cocaine from Tuck from December, 1996, through early 1998.

Kenneth Josey was murdered and Detective Stonebraker was investigating the case. Stonebraker asked Tuck to come to the police station for an interview. At that interview Tuck admitted he had dealt drugs with Josey and that he knew Holtsclaw.

*Tuck v. State*, No. 79A02-9811-CR-867, *3 (Ind. Ct. App. Aug. 30, 1999). The trial court held a jury trial in July 1998. The jury found Tuck guilty as charged of two counts of Class A felony dealing in cocaine, two counts of Class A felony conspiracy to commit dealing in cocaine, two counts of Class B felony dealing in cocaine, two counts of Class B felony possession of cocaine, one count of Class C felony corrupt business influence, and one count of Class D felony operating while an habitual traffic violator. The trial court entered judgments of convictions on all but two of the convictions[1] and sentenced Tuck to an aggregate term of seventy-eight (78) years in the Indiana Department of Correction.

---

[1] The trial court did not enter judgments of conviction on the two possession of cocaine charges.

[4] On direct appeal, Tuck challenged: (1) the sufficiency of his Class C felony corrupt business influence conviction; (2) the trial court's rulings on his motion to suppress his pretrial police statement and his motion to sever, and (3) the trial court's evidentiary ruling to exclude evidence. On August 30, 1999, another panel of this Court affirmed Tuck's convictions.

[5] Thereafter, in July 2000, Tuck filed a pro se petition for post-conviction relief. Tuck did not include his post-conviction petition in his Appellant's Appendix; therefore, we are unaware of what post-conviction claims he raised. He also did not include the State's answer to his petition.[2]

[6] At the beginning of his post-conviction proceedings, Tuck was represented by the Indiana State Public Defender's Office. Specifically, the State Public Defender's Office entered an appearance on behalf of Tuck in October 2000. At that time, the State Public Defender filed a notice of inability to investigate and requested that the post-conviction court defer any ruling until the Public Defender filed a certificate of readiness. The post-conviction court granted the request. The State Public Defender did not file a certificate of readiness and ultimately withdrew its appearance in January 2004.

---

[2] In fact, Tuck has failed to include in his Appellant's Appendix the vast majority of "pleadings and other documents from the Clerk's Record" that were part of his post-conviction proceeding, which is contrary to Indiana Appellate Rule 50. There were multiple motions filed and orders entered during the course of his post-conviction proceeding, and Tuck has not included these in his Appendix. Tuck's failure to include these documents has required us to rely upon the chronological case summary to piece together the procedural facts of this case. Tuck's scant Appendix has ultimately impeded our review of this case.

[7]     After the State Public Defender's Office withdrew from the case, Tuck did not take any action in his post-conviction proceeding for three and one-half years. In July 2007, Tuck filed a pro se motion for leave to amend his post-conviction petition, which the trial court granted.[3] Tuck, however, did not amend his petition.

[8]     In November 2007, he filed another pro se motion for leave to amend his petition, which the trial court again granted and gave him thirty days to file the amended petition.[4] Tuck did not file an amended petition.

[9]     In March 2008, Tuck filed a "Notice to Court[,]" in which he requested the post-conviction court to allow him to proceed pro se. (App. 18).[5] In his notice, Tuck stated that he had hired private counsel, Marcel Katz ("Attorney Katz"), and that his counsel had not yet entered an appearance.[6] In April 2008, the post-conviction court entered an order, permitting Tuck to proceed pro se, and the court set a status conference and ordered Attorney Katz to appear.

[10]    Attorney Katz entered his appearance in October 2008. Thereafter, the parties agreed that a post-conviction hearing would be scheduled for February 19,

---

[3] When the trial court granted Tuck leave to file an amended petition, it did so subject to the approval of the State Public Defender's Office. The Public Defender's Office then filed a notice of non-representation.

[4] The trial court, again, granted Tuck leave to file an amended petition subject to the approval of the State Public Defender's Office, and the Public Defender's Office, thereafter, filed a notice of non-representation.

[5] This notice was one of the very few pleadings that Tuck included in his Appellant's Appendix.

[6] In his motion, Tuck asserted that he had hired Attorney Katz in July 2005.

2009. Just prior to this scheduled hearing, Tuck filed a motion to continue. The parties then agreed that Tuck's post-conviction hearing would be rescheduled for May 14, 2009.

[11] Shortly before the May 2009 hearing, the parties agreed to vacate the post-conviction hearing and to schedule a status conference for June 2009. The trial court held the June 2009 status conference, and then, by agreement of the parties, held additional status conferences in August 2009, September 2009, and December 2009. At the December 2009 hearing, pursuant to a request by Tuck, the post-conviction court scheduled another status hearing for January 29, 2010.

[12] The record on appeal before us is silent as to whether the January 2010 status hearing occurred. The record indicates only that Tuck took no action on his post-conviction case for more than four years. In March 2014, Tuck filed a pro se motion to amend his post-conviction petition. The post-conviction court struck Tuck's motion because he was represented by counsel, and it set a status hearing.

[13] The post-conviction court held the status hearing in May 2014. At that time, the post-conviction court informed Tuck that he had until July 11, 2014 to file an amended post-conviction petition, and it scheduled another status hearing for that same date.

[14] The post-conviction court held the July 2014 status hearing, but Tuck did not file an amended petition. At the hearing, the parties agreed to set an additional

status hearing for August, 29, 2014, which was later reset by the post-conviction court for November 7, 2014. In the meantime, on October 28, 2014, Tuck filed a pro se motion to amend his post-conviction petition, which the post-conviction court struck because Tuck was represented by counsel.

[15] On October 30, 2014, the State filed, pursuant to Trial Rule 41(E), a motion to dismiss Tuck's post-conviction petition for failure to prosecute his petition. Like many of the pleadings in this case, the State's motion is not included in Tuck's Appendix. Nevertheless, it appears from the record that the State also sought to dismiss Tuck's post-conviction petition based on laches.

[16] At the November 2014 status hearing, the post-conviction court gave Tuck until January 5, 2015 to file an amended post-conviction petition, and it set a post-conviction hearing for January 2015. Tuck filed, by counsel, an amended petition on January 7, 2015. Tuck did not include his amended post-conviction petition in his Appellant's Appendix; therefore, we are unaware of what post-conviction claims he raised. Tuck has also failed to include in his Appendix the State's answer to his amended petition.

[17] On February 27, 2015, the post-conviction court held a hearing on the issue of laches only. Tuck was present at the hearing and was represented by his private counsel, Attorney Katz. At the beginning of the hearing, Tuck asserted that the post-conviction court should not grant the State's motion to dismiss based on laches because: (1) the State had not raised laches in its initial answer to Tuck's first post-conviction petition; (2) laches applied only to the delay in the filing of

the post-conviction petition, not the delay in prosecuting the post-conviction petition; and (3) the State could not show prejudice because it had acquiesced in the delay by consenting to Tuck's continuances and by failing to raise a laches objection at the time of the continuances. The State argued that it did not raise a laches defense in its answer to Tuck's initial post-conviction petition filed in 2000 because there was no unreasonable delay at that point. The State asserted that it could not have anticipated in 2000 that Tuck would have delayed in the prosecution of his post-conviction petition for fifteen years. It also argued that it was not precluded from raising laches based on its agreement to Tuck's requested delays.

[18] During the hearing, in an effort to show an unreasonable delay, the State had the post-conviction court take judicial notice of the dockets from Tuck's post-conviction proceeding and his underlying criminal proceeding. In its attempt to show prejudice, the State presented testimony from two witnesses regarding the State's diminished ability to re-prosecute the case. The State presented testimony from an investigator from the prosecutor's office who testified that he had contacted six police detectives associated with Tuck's four controlled-buy cases and that these individuals were no longer active officers. The investigator also testified that he was unable to contact three others detectives. Additionally, the investigator testified that Tuck's recorded statement to police, which was "crucial evidence to the case[,]" no longer existed and that some of the evidence relating to the confidential informants was either destroyed or missing. (Tr. 19). The State also presented testimony from a drug task force

detective that was involved in one of the controlled buys from Tuck. This detective testified that he did not have an accurate recollection of Tuck's case, other than what was in his reports, and that he would not be comfortable testifying in a future jury trial. Tuck did not present any witnesses. The post-conviction court took the laches matter under advisement.

[19] Later, the post-conviction court notified the parties that the case of *Thompson v. State*—which dealt with the issue of whether laches applied to a delay in prosecuting a post-conviction petition—had a pending transfer petition, and the court informed the parties that it was going to delay entry of an order until a final resolution of the *Thompson* case. *See Thompson v. State*, 31 N.E.3d 1002 (Ind. Ct. App. 2015), *trans. denied*.

[20] Following our supreme court's denial of transfer in the *Thompson* case, the post-conviction court issued an order and granted the State's motion to dismiss Tuck's post-conviction petition. The post-conviction court found, in relevant part:

> Once [Tuck's] PCR was filed the cause remained open for the next fifteen (15) years. [Tuck] filed his original Petition pro se and ultimately arranged representation through the State and privately, so he was aware of the remedy as early as July of 2000. The Court sees no reason to find that once a Petition has been filed a Petitioner can draw out a proceeding for as long [as] he wishes, absent a stay from the Court.
>
> After the second PCR hearing date in this cause was set May 14, 2009, was continued, [Tuck] did not move to stay [the] proceedings, withdraw his Petition[,] or set further hearings. No

further action was taken until March 18, 2014. Prior to March 5, 2015, [Tuck] did not provide the record of proceedings to the State. The State did not waive the remedy of Laches by not raising the issue at every continuance sought by [Tuck]. Clearly, however, the claim is now ripe. The record clearly shows that [Tuck] unreasonably delayed proceeding through his actions alone, amounting to a conscious indifference o[r] procrastination, or acquiescence. . . .

The record further suggests that the State would be prejudiced at this time if it were required to go forward with a re-trial of the case.

(App. 14-15). Tuck now appeals.

# Decision

[21] At the outset, we note that Tuck has chosen to proceed pro se and that his Appendix did not fully comply with our Appellate Rules. It is well settled that pro se litigants are held to the same legal standards as licensed attorneys. *Evans v. State*, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), *trans. denied*. Thus, pro se litigants are bound to follow the established rules of procedure and must be prepared to accept the consequences of their failure to do so. *Id.* "We will not become a party's advocate, nor will we address arguments that are inappropriate, improperly expressed, or too poorly developed to be understood." *Barrett v. State*, 837 N.E.2d 1022, 1030 (Ind. Ct. App. 2005), *trans. denied*.

[22] Tuck appeals the post-conviction court's order granting the State's motion to dismiss Tuck's petition for post-conviction relief pursuant to the equitable doctrine of laches.

[23] Our Indiana Supreme Court has explained our standard of review in a laches case as follows:

> The equitable doctrine of laches operates to bar consideration of the merits of a claim or right of one who has neglected for an unreasonable time, under circumstances permitting due diligence, to do what in law should have been done. For laches to apply, the State must prove by a preponderance of the evidence that the petitioner unreasonably delayed in seeking relief and that the State is prejudiced by the delay. For post-conviction laches purposes, prejudice exists when the unreasonable delay operates to materially diminish a reasonable likelihood of successful re-prosecution.
>
> Because the State had the burden of proving laches as an affirmative defense, [a post-conviction petitioner does] not appeal[] from a negative judgment, and the applicable standard of review requires that we affirm unless we find that the judgment was clearly erroneous. This is a review for sufficiency of evidence. Without reweighing the evidence or assessing the credibility of witnesses but rather looking only to the evidence and reasonable inferences favorable to the judgment, we will affirm if there is probative evidence to support the post-conviction court's judgment.

*Armstrong v. State*, 747 N.E.2d 1119, 1120-21 (Ind. 2001) (internal citations omitted).

[24] Recently, our Court has explained that laches applied not only to a petitioner's delay in filing a post-conviction petition but also—as is relevant to the situation

in this case—to a petitioner's delay in prosecuting a post-conviction petition. *See Thompson*, 31 N.E.3d at 1007. In *Thompson*, the petitioner filed a post-conviction petition in 1992 and, thereafter, filed several amendments, "but [he] neglected to prosecute the petition until 2014." *Id.* at 1003. The State filed a motion to dismiss his post-conviction petition based on laches for his delay in prosecuting his petition, and the post-conviction court granted the State's motion. *Id.* at 1005. On appeal, our Court rejected the petitioner's argument that laches applied only to an unreasonable delay between the final decision of the trial court and the original filing of a post-conviction petition, and we held that the delay element of laches may be based on an unreasonable delay in prosecuting a post-conviction petition. *Id.* at 1003-07.[7]

[25] Here, the State argued, and the post-conviction court found, that laches barred Tuck's post-conviction petition. Specifically, the post-conviction court found that Tuck unreasonably delayed in prosecuting his post-conviction petition and that the delay prejudiced the State.

[26] Tuck does not challenge the post-conviction court's determination that the State was prejudiced by his delay. Instead, he argues that the post-conviction court erred by finding that the delay between the filing of his post-conviction petition and his hearing was an unreasonable delay. He acknowledges that there was a long delay and that he had "an excessive amount of continuances." (Tuck's Br.

---

[7] In *Thompson*, our Court did not analyze the prejudice element of laches because the parties stipulated that the petitioner's delay had resulted in prejudice to the State. *See Thompson*, 31 N.E.3d at 1005.

6). Tuck, however, asserts that the State should not be allowed to attribute the delay to him because: (1) he was represented by private and public counsel (Attorney Katz and the State Public Defender) and was, therefore, not personally responsible for the delay; and (2) the State "acquiesced to the delays by consenting" to his continuances. (Tuck's Br. 6).

[27] As to Tuck's argument that any delay should not be attributed to him because he was represented by private counsel, we note that such an argument "runs counter to our longstanding rule that a client is bound by his attorney's actions." *Weinreb v. TR Developers, LLC*, 943 N.E.2d 856, 867 (Ind. Ct. App. 2011), *trans. denied*. *See also Parker v. State*, 676 N.E.2d 1083, 1086 (Ind. Ct. App. 1997) (explaining that the "general rule is that a client is bound by his attorney's actions in civil proceedings").

[28] However, any delay during his representation by the Indiana Public Defender's Office would not be counted against him for the purposes of laches. We have explained that, when reviewing the unreasonable delay element of laches, a petitioner will not be "penalized" for the delays between the filing of the post-conviction petition and the hearing on the petition, where such delays were caused by the Public Defender's Office, because "[o]ne arm of the State (the Prosecutor) may not take advantage of a delay created by another arm of the State (the Public Defender) to the detriment of the defendant." *Douglas v. State*, 634 N.E.2d 811, 816 (Ind. Ct. App. 1994), *opinion corrected on reh'g*, *trans. denied*. *See also Horton v. State*, 510 N.E.2d 648, 649 (Ind. 1987) (declining to charge the petitioner with any delay, for the purpose of laches, that occurred after he had

contacted the Public Defender's Office); *Edwards v. State*, 676 N.E.2d 1087, 1090 (Ind. Ct. App. 1997) (holding that "laches w[ould] not lie" where the petitioner was "diligent in maintaining contact with the Public Defender" and was "continuously promised assistance"), *reh'g denied*, *trans. denied*.

[29]    Here, Tuck was represented by the State Public Defender's Office for only the first four years of the fifteen years that his post-conviction petition was pending. Specifically, Tuck filed his pro se post-conviction petition in July 2000 and was represented by the Indiana State Public Defender's Office from October 2000 to January 2004, during which time the Public Defender had filed a notice of inability to investigate. Therefore, Tuck will not be "penalized" for this four-year delay where it was caused by the Public Defender's Office. *See Douglas*, 634 N.E.2d at 816.

[30]    However, aside from this initial four-year period, Tuck, had additional time periods where he delayed in the prosecution of his post-conviction petition. First, Tuck did not take any action in his post-conviction proceeding for three and one-half years after the State Public Defender withdrew from the case (i.e., delay from January 2004 to July 2007). Next, after Tuck's private counsel, Attorney Katz, entered his appearance in October 2008, Tuck delayed the post-conviction hearing and sought multiple status hearings during the subsequent year or so. We acknowledge that the State agreed to the status hearings; however, the State's acquiescence to Tuck's request for these hearings during the period from October 2008 to December 2009 does not negate the fact that Tuck continued to thereafter delay in the prosecution of his post-conviction

petition. Specifically, Tuck had a more than four-year period—from December 2009 to March 2014—during which he took absolutely no action on his post-conviction petition. Then, Tuck continued to delay the proceedings when he failed to file an amended post-conviction petition despite the trial court's permission to do so. Upon Tuck's failure to file an amended petition by a date specified by the post-conviction court (July 11, 2014), the State filed a motion to dismiss Tuck's petition based on laches and failure to prosecute. Finally, when the post-conviction court gave Tuck until January 5, 2015 to file an amended petition, he filed it on January 7, 2015.

[31] Given the specific facts of this case—especially the more than four-year delay between 2009 and 2014 when Tuck took no action on his petition after the State had already given him the time and opportunity to prepare his post-conviction case by complying with his requests for status hearings, as well as, his subsequent failure to file an amended petition despite the post-conviction court's grant of his request to do so—we conclude that the post-conviction court did not err by concluding that the State had met its burden of proving that Tuck had unreasonably delayed in his prosecution of his post-conviction petition. *See, e.g.*, *Thompson*, 31 N.E.3d at 1007 (holding that laches applies to a petitioner's delay in prosecuting a post-conviction petition). Accordingly, we affirm the post-conviction court judgment granting the State's motion to dismiss Tuck's petition.

[32]     Affirmed.

Baker, J., and Mathias, J., concur.