FILED

Aug 23 2023, 9:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANTS

Tomas M. Thompson
Thompson Legal LLC
Morocco, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Jones
James P. Moloy
Bose McKinney & Evans LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeffrey L. Foster, Kathie J. Foster, and The Earl Goodwine Trust, <br><br> *Appellants-Plaintiffs,* <br><br> v. <br><br> First Merchants Bank, N.A., <br><br> *Appellee-Defendant.* | August 23, 2023 <br><br> Court of Appeals Case No. 23A-PL-473 <br><br> Appeal from the Benton Circuit Court <br><br> The Honorable John D. Potter, Special Judge <br><br> Trial Court Cause No. 04C01-1101-PL-10 |

**Opinion by Judge Bradford**
Judges Riley and Weissmann concur.

**Bradford, Judge.**

## Case Summary

[1] This appeal involves a civil action that the trial court described below as having "lain dormant for longer times than many Pacific Rim volcanoes." The action, which was filed on January 31, 2011, centers around a 2010 real-estate transaction. On December 19, 2022, the trial court entered summary judgment in favor of First Merchant's Bank, N.A. ("the Bank"), finding that dismissal was appropriate due to Jeffrey and Kathie Foster's and The Earl Goodwine Trust's (collectively, "the Appellants") failure to prosecute the action. While it is undisputed that the numerous periods of inaction, totaling approximately ten years, had occurred since the case was filed in 2011, the record demonstrates that the Appellants had resumed their prosecution of the case prior to the Bank filing its request for a dismissal of the action. As such, pursuant to the Indiana Supreme Court's decision in *State v. McClaine*, 261 Ind. 60, 300 N.E.2d 342 (1973), the Bank's request for a dismissal for failure to prosecute was untimely. However, because we conclude that the designated evidence demonstrates that the Appellants should be barred from continuing the pursuit of their claims against the Bank pursuant to the doctrine of laches, we affirm.

## Facts and Procedural History

[2] In a related underlying action, the Bank sought to enforce a promissory note against Treslong Dairy, LLC ("Treslong Dairy"), which had been secured by a security agreement that had granted the Bank, among other things, a security interest in all of Treslong Dairy's haylage and silage ("the Collateral"). On

May 27, 2010, the Benton Circuit Court ordered the Bank to sell the Collateral. In August of 2010, the Bank sold the Collateral for an amount less than the full judgment owed to the Bank. The Appellants, who were junior lienholders, received nothing from the sale.

[3] On January 31, 2011, the Appellants filed a complaint against the Bank concerning its sale of the Collateral. The Bank filed its answer on May 3, 2011. The case then proceeded as follows:

> From January of 2011 through October of 2011 there was a complaint, [an] intervention and answer, an enlargement of time and a withdrawal of an appearance followed by a new appearance. Nothing happened from October 13, 2011 until October 15, 2012 when a motion to withdraw appearance was filed. The case remained dormant until February of 2014 when there was a new appearance and a request for enlargement of time to answer. That motion for enlargement of time triggered a flurry of additional motions for enlargement of time from other counsel which culminated with [the trial court] granting the final enlargement of time to [the Bank] on July 2, 2014. No other pleadings were ever filed—just requests for enlargements of time.
>
> Then, *nothing happened until June 20, 2018* when an attorney for [the Bank] withdrew. *One more year passed* before another withdrawal motion was filed on April 30, 2019. *Three more years passed* until May 17, 2022 when a new counsel entered his appearance for [the Appellants] and asked for a case management conference…. The case management request initiated a new round of attorney withdrawals until finally, [the Bank] filed a Motion for Summary Judgment on August 12, 2022

seeking dismissal of the case for Trial Rule 41E issues and/or because of laches.[1]

Appellants' App. Vol. II pp. 13–14 (emphases in original). Following a hearing, the trial court granted the Bank's motion for summary judgment. The Appellants then filed a motion to correct error, which the trial court denied on February 2, 2023.

# Discussion and Decision

[4] The Appellants appeal the trial court's order granting the Bank's motion for summary judgment following the denial of their motion to correct error. "We review denial of a motion to correct error for abuse of discretion." *In re Paternity of V.A.*, 10 N.E.3d 65, 67 (Ind. Ct. App. 2014). "An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before the court, or the reasonable inferences [drawn] therefrom." *Id.*

[5] When reviewing the grant of summary judgment, our standard of review is the same as that of the trial court. *FLM, LLC v. Cincinnati Ins. Co.*, 973 N.E.2d 1167, 1173 (Ind. Ct. App. 2012) (citing *Wilcox Mfg. Grp., Inc. v. Mktg. Servs. of Ind., Inc.*, 832 N.E.2d 559, 562 (Ind. Ct. App. 2005)), *trans. denied*. We stand in the shoes of the trial court and apply a de novo standard of review. *Id.* (citing *Cox v. N. Ind. Pub. Serv. Co.*, 848 N.E.2d 690,

---

[1] The Bank asserts that it "elected to seek summary judgment, as opposed to filing a motion to dismiss, due to its desire to include other relevant material concerning the prejudice that the [Appellants] delay had caused." Appellee's Br. p. 8.

695 (Ind. Ct. App. 2006)). Our review of a summary judgment motion is limited to those materials designated to the trial court. Ind. Trial Rule 56(H); *Robson v. Tex. E. Corp.*, 833 N.E.2d 461, 466 (Ind. Ct. App. 2005), *trans. denied*. Summary judgment is appropriate only where the designated evidence shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. T.R. 56(C). For summary judgment purposes, a fact is "material" if it bears on the ultimate resolution of relevant issues. *FLM*, 973 N.E.2d at 1173. We view the pleadings and designated materials in the light most favorable to the non-moving party. *Id.* Additionally, all facts and reasonable inferences from those facts are construed in favor of the non-moving party. *Id.* (citing *Troxel Equip. Co. v. Limberlost Bancshares*, 833 N.E.2d 36, 40 (Ind. Ct. App. 2005), *trans. denied*).

A trial court's grant of summary judgment is clothed with a presumption of validity, and the party who lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous. *Henderson v. Reid Hosp. and Healthcare Servs.*, 17 N.E.3d 311, 315 (Ind. Ct. App. 2014), *trans. denied*. Where a trial court enters specific findings and conclusions, they offer insight into the rationale for the trial court's judgment and facilitate appellate review, but are not binding upon this court. *Id.* We will affirm upon any theory or basis supported by the designated materials. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id.*

*Webb v. City of Carmel*, 101 N.E.3d 850, 860–61 (Ind. Ct. App. 2018).

## I. Trial Rule 41(E)

[6] In its motion for summary judgment, the Bank argued that dismissal of the action was appropriate pursuant to Trial Rule 41(E) because the Appellants had

failed to diligently pursue their claims. Trial Rule 41(E) provides for the dismissal of an action following a period of inaction, stating that

> [W]hen no action has been taken in a civil case for a period of sixty [60] days, the court, on motion of a party or on its own motion shall order a hearing for the purpose of dismissing such case. The court shall enter an order of dismissal at plaintiff's costs if the plaintiff shall not show sufficient cause at or before such hearing. Dismissal may be withheld or reinstatement of dismissal may be made subject to the condition that the plaintiff comply with these rules and diligently prosecute the action and upon such terms that the court in its discretion determines to be necessary to assure such diligent prosecution.

However, the Indiana Supreme Court has held that "[a] motion to dismiss for want of prosecution should not be granted if the plaintiff resumes diligent prosecution of his claim, even though, at some prior period of time, he has been guilty of gross negligence." *McClaine*, 261 Ind. at 63, 300 N.E.2d at 344. "The burden is clearly on the defendant to timely file a motion to dismiss pursuant to [Trial Rule] 41(E). That is to say, the defendant *must* file his motion after the sixty-day period has expired and *before* the plaintiff resumes prosecution. *Id.* (emphases added).

[7] More recently, in *Babchuk v. Indiana University Health Tipton Hospital, Inc.*, 30 N.E.3d 1252, 1255 (Ind. Ct. App. 2015), we concluded that dismissal was inappropriate because it had not been requested prior to the plaintiff's resumption of the case. In *Babchuk*, on May 29, 2014, after an approximately eighteen-month period of inactivity, Babchuk filed his motion to stay or, in the

alternative, for setting of a scheduling conference and the Hospital filed its motion to dismiss for failure to prosecute. The trial court granted the Hospital's motion to dismiss. 30 N.E.3d at 1255. On appeal, we concluded that trial court had abused its discretion in granting the Hospital's motion because the motion was untimely as it had not been "filed *before* Babchuk resumed prosecution of his case." *Id.* (emphasis in original).

[8] The Bank asserts that it elevates "form over substance" to base a ruling on dismissal under Trial Rule 41(E) on the chronological order in which motions are filed. Appellee's Br. p. 12. However, *McClaine* and *Babchuk* make it clear that the chronological order in which the motions are filed is the determining factor as to the timeliness of a Trial Rule 41(E) motion to dismiss.

[9] The Bank further asserts that Indiana jurisprudence has begun to move away from the so-called bright-line rule set forth in *McClaine*. In support, the Bank cites to our decision in *Belcaster v. Miller*, 785 N.E.2d 1164 (Ind. Ct. App. 2003), *trans. denied*. In *Belcaster*, we noted that

> Courts of review generally balance several factors when determining whether a trial court abused its discretion in dismissing a case for failure to prosecute. These factors include: (1) the length of the delay; (2) the reason for the delay; (3) the degree of personal responsibility on the part of the plaintiff; (4) the degree to which the plaintiff will be charged for the acts of his attorney; (5) the amount of prejudice to the defendant caused by the delay; (6) the presence or absence of a lengthy history of having deliberately proceeded in a dilatory fashion; (7) the existence and effectiveness of sanctions less drastic than dismissal which fulfill the purposes of the rules and the desire to avoid

court congestion; (8) the desirability of deciding the case on the merits; and (9) the extent to which the plaintiff has been stirred into action by a threat of dismissal as opposed to diligence on the plaintiff's part. *Lee v. Friedman*, 637 N.E.2d 1318, 1320 (Ind. Ct. App. 1994). "The weight any particular factor has in a particular case appears to depend upon the facts of that case." *Id.* However, a lengthy period of inactivity may be enough to justify dismissal under the circumstances of a particular case, especially if the plaintiff has no excuse for the delay. *Id.*

785 N.E.2d at 1167. The Bank asserts that our recognition of the above-quoted factors indicates a shift away from *McClaine's* straight-line timeliness rule and a move towards giving trial court's more discretion to consider whether dismissal is appropriate. We cannot agree with the Bank's assertion, however, that our decision in *Belcaster* represents a move away from the Indiana Supreme Court's decision in *McClaine*.

[10] In *Belcaster*, there were four defendants, Fred Dempsey ("Dempsey"), Fairfield Realty ("Fairfield"), Becky Miller ("Miller"), and Matthew Miller ("Matthew"). *Id.* at 1166. After an approximate ten-month period of delay, Dempsey and Fairfield filed Trial Rule 41(E) motions to dismiss. *Id.* The motions prompted the Belcasters to file a "motion to set trial." *Id.* Miller and Matthew subsequently filed Trial Rule 41(E) motions to dismiss. *Id.* Following a hearing, the trial court granted the motions to dismiss. *Id.* On appeal, the Belcasters argued that "the trial court erred in dismissing their complaint against Miller and Matthew because they filed their motion to set trial before Miller and Matthew filed their Trial Rule 41(E) motion to dismiss for failure to

prosecute." *Id.* at 1168 (emphasis omitted). Considering the timeliness issue, we concluded as follows:

> [b]ecause the purpose of Trial Rule 41(E) is to ensure that plaintiffs diligently pursue their claims, this purpose is fulfilled if one defendant files a motion to dismiss for failure to prosecute before a plaintiff resumes prosecution. Therefore, in lawsuits involving more than one defendant, trial courts do not need to separate the various defendants when determining whether the plaintiff resumed prosecution before the filing of a Trial Rule 41(E) motion to dismiss for failure to prosecute.

*Id.* at 1169. We do not read *Belcaster* as a move away from the Indiana Supreme Court's decision regarding timeliness in *McClaine*, but rather a clarification that motions should be considered timely so long as at least one defendant files a motion to dismiss prior to resumption of prosecution. Further, the facts and circumstances at issue in *Belcaster* differ from those at issue in this case as Dempsey and Fairfield filed their motions to dismiss *before* the Belcasters took any action to resume prosecution of their case. No request for dismissal was made prior to resumption of prosecution in this case.

[11]   It is undisputed that there have been multiple, lengthy periods of inaction in this case. Following the most recent period of inaction, the Appellants resumed their prosecution of the case on May 17, 2022, by filing a motion for a case-management conference.[2] The trial court granted the motion and the case-

---

[2] The Bank does not assert that the Appellants' request for a case-management conference was insufficient to constitute resumption of their prosecution of their case. Regardless, we concluded in *Babchuk*, we concluded

management conference was ultimately scheduled for August 22, 2022. The Bank did not file its motion for summary judgment, requesting a dismissal of the action, until August 12, 2022. In so far as the Bank's motion sought dismissal for a failure to prosecute, the motion was untimely as it was not filed until after the Appellants had resumed their prosecution of the case. *See McClaine*, 261 Ind. at 63, 300 N.E.2d at 344; *Babchuk*, 30 N.E.3d at 1255; *see also Baker Mach., Inc. v. Superior Canopy Corp.*, 883 N.E.2d 818, 823 (Ind. Ct. App. 2008) (concluding that dismissal is appropriate only when the Trial Rule 41(E) prompt is filed before resumption of the prosecution of the case), *trans. denied*. As such, we must agree with the Appellants that dismissal pursuant to Trial Rule 41(E) was inappropriate.

## II.   Laches

[12]   The Bank alternatively argued below and contends on appeal that dismissal was warranted under the equitable doctrine of laches.

> Laches is an equitable defense that may be raised to stop a person from asserting a claim she would normally be entitled to assert. *Indiana Real Estate Comm'n v. Ackman*, 766 N.E.2d 1269, 1273 (Ind. Ct. App. 2002). "Laches is neglect for an unreasonable length of time, under circumstances permitting diligence, to do what in law should have been done." *Gabriel v. Gabriel*, 947 N.E.2d 1001, 1007 (Ind. Ct. App. 2011). "The general doctrine is well established and long recognized: 'Independently of any

---

that a request for a scheduling hearing, which is similar in nature to a case-management conference, "indicates a party's intent to move forward with litigation" and "is sufficient to constitute resumption of prosecution for purposes of Trial Rule 41(E)." 30 N.E.3d at 1255.

statute of limitation, courts of equity uniformly decline to assist a person who has slept upon his rights and shows no excuse for his laches in asserting them.'" [*SMDfund, Inc. v. Fort Wayne-Allen Cnty. Airport Auth.*, 831 N.E.2d 725, 729 (Ind. 2005)] (quoting *Penn Mutual Life Ins. Co. v. Austin*, 168 U.S. 685, 698, 18 S.Ct. 223, 42 L.Ed. 626 (1898)).

*Angel v. Powelson*, 977 N.E.2d 434, 445 (Ind. Ct. App. 2012). Stated differently, laches "'is an implied waiver arising from knowledge of existing conditions and an acquiescence in them, the neglect to assert a right, as taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to the other party and thus acting as a bar in a court of equity.'" *Thompson v. State*, 31 N.E.3d 1002, 1005–06 (Ind. Ct. App. 2015) (quoting *Douglas v. State*, 634 N.E.2d 811, 815 (Ind. Ct. App. 1994)), *trans. denied*.

[13]     The doctrine of laches may bar a plaintiff's claim if a defendant establishes the following three elements of laches: (1) inexcusable delay in asserting a known right; (2) an implied waiver arising from knowing acquiescence in existing conditions; and (3) a change in circumstances causing prejudice to the adverse party. *SMDfund*, 831 N.E.2d at 729. A mere lapse of time is not sufficient to establish laches; it is also necessary to show an unreasonable delay that causes prejudice or injury. *Id.* at 731. Prejudice may be created if a party, with knowledge of the relevant facts, permits the passing of time to work a change of circumstances by the other party. *Id.*

*Angel*, 977 N.E.2d at 445.

[14]     Although the doctrine of laches is most commonly applied to cases in which a plaintiff has slept on their rights before initiating legal proceedings, it has also

been applied to cases in which a plaintiff has slept on their rights after initiating legal proceedings. In *Thompson*, Thompson filed a petition for post-conviction relief ("PCR petition") on August 17, 1992. 31 N.E.3d at 1004. He then "neglected to prosecute the petition until February 11, 2005 when he requested to proceed *pro se* by affidavit." *Id.* In its March 8, 2005 response, the State argued that Thompson's continued prosecution of his claim should be barred by the doctrine of laches, asserting that it had been prejudiced by Thompson's delay in prosecuting his PCR petition. *Id.* Thompson then filed four separate amendments to his petition on various dates between May of 2005 and November of 2006. *Id.*

> Thompson took no further action to prosecute the PCR petition until July of 2012 when a new attorney appeared for Thompson. On December, 26, 2013, Thompson filed a fifth amendment to his PCR petition which raised several new claims of error as well as an ineffective assistance of counsel claim.

*Id.* at 1005. The State again raised the defense of laches in response. *Id.* Following a hearing on laches, the post-conviction court granted the State's motion to dismiss. *Id.*

[15] In affirming the judgment of the post-conviction court, we noted the State's argument that

> Thompson's failure to prosecute his petition constituted an unreasonable delay in seeking relief. At the July 2, 2014 PCR hearing regarding laches, the State argued, "if you were to apply [Thompson's] reasoning, then if a person is convicted today and files a PCR tomorrow[,] he can sit on his hands for twenty years

later, wait for witnesses to die, wait for the case to go to crap and then say, [']no laches[']." Tr. p. 48.

*Id.* at 1007 (brackets in original). Finding the State's laches argument to be persuasive, we concluded that "[a]lthough the particular facts of some cases may present a distinction between a delay in filing and a delay in prosecuting a PCR petition, we see no reason to draw such a distinction here as the prejudice to the State would be the same in either case." *Id.* We further concluded that "[t]here was sufficient probative evidence to support the finding of laches." *Id.* We find our opinion in *Thompson* to be instructive given that in this case, the Appellants filed their complaint and then did little to nothing for the next decade plus.

[16] Turning our attention back to this case, we note that the trial court acknowledged the Bank's laches argument but found that it "simply need not address the issue of laches having dismissed the case under Trial Rule 41." Appellants' App. Vol. II p. 16. In dismissing the case under Trial Rule 41, however, the trial court made findings that also relate to the question of laches. First, the trial court found that the Appellants had allowed for a lengthy delay in proceedings with a total length of delay being "over 10 years." Appellants' App. Vol. II p. 15. Specifically, the trial court found that

> Filing of a request for a case management conference for the first [time] after 11 years of the case pending should not save the [Appellants] from a decade of dilatory behavior. The delay in this case is egregious. It is true that [the Bank] did not do anything during those ten years, but it does not have to. The

> [Appellants] must prosecute the action and [they] did not, despite
> numerous opportunities to do so and numerous reminders
> triggered by withdrawals and appearances of counsel over the
> ten-year period.… The delay of over 10 years is not justifiable
> nor excusable, the length of that delay is egregious and the
> prejudice to the [Bank] is real.

Appellants' App. Vol. II p. 15. Regarding prejudice to the Bank, the trial court found that

> [The Appellants have not] shown nor attempted to show, any
> just reason or excuse for the delay in this case other than prior
> counsel received a lot of documents to sort through. The
> collateral equipment in question has now been used for another
> twelve years, if it still exists, and any type of discovery to
> determine its fair market sale value back in 2009 or 2010 would
> be nearly impossible. The [Bank] points out that it no longer has
> contact or connections with nine of the ten former witnesses
> identified in 2014 and are prejudiced.

Appellants' App. Vol. II p. 15. The trial court also found that "the extreme length of time of the delay in this case sands out" and the "prejudice to the [Bank] is also multiplied by so much time." Appellants' App. Vol. II p. 15. The trial court further found that "there is a degree of personal responsibility on the part of" the Appellants, they "are part of the cause of delay in not diligently pursuing new counsel," and their arguments that they had not engaged in any deliberate dilatory behaviors "stretches the borders of credibility." Appellants' App. Vol. II p. 15.

[17] "A defendant relying on laches must show a lack of diligence by the plaintiff and prejudice to the defendant" and "the plaintiff has the burden of explaining its delay." *Simon v. City of Auburn, Ind., Bd. of Zoning Appeals*, 519 N.E.2d 205, 215 n.9 (Ind. Ct. App. 1998). The trial court's above-quoted findings demonstrate that the Bank had shown both prejudice and a lack of diligence by the Appellants and that the Appellants had failed to provide justifiable reasons for their lengthy delay. Upon review, we conclude that the trial court's findings are supported by the designated evidence. As such, we further conclude that the Appellants should be barred by the doctrine of laches from continuing to pursue their claims against the Bank. The Appellants engaged in long periods of delay, which resulted in prejudice to the Bank. The length of the delay, at approximately ten years, was so long that we have no trouble equating the length of the delay to a waiver or an abandonment by the Appellants of their claims against the Bank.[3] Thus, the trial court did not err in granting the Bank's motion for summary judgment. *See Morgan v. Dickelman Ins. Agency, Inc.*, 202 N.E.3d 454, 459 (Ind. Ct. App. 2022) (providing that we may affirm the entry of summary judgment on any grounds supported by the designated evidentiary materials), *trans. denied*.

---

[3] We are unconvinced by the Appellants' assertion that, after ten years of delay by the Appellants, the Bank cannot assert laches merely because it did not include it as an affirmative defense in its answer to the Appellants' complaint more than a decade ago. *See Thompson*, 31 N.E.3d at 1005 (allowing the State to raise the defense of laches almost twenty years after the initial PCR petition had been filed rather than requiring the State to have claimed laches in its original answer to the PCR petition).

[18]    The judgment of the trial court is affirmed.

Riley, J., and Weissmann, J., concur.